SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
MARK G. RACKERS, Cal Bar No. 254242
ANNA JANE I. ZARNDT, Cal Bar No. 327719
501 West Broadway, 18th Floor
San Diego, California 92101-3598
Telephone:  619.338.6500
Facsimile:   619.234.3815
Email:       mrackers@sheppard.com
             azarndt@sheppard.com

LISA YUN PRUITT, Cal Bar No. 280812
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone:  858.720.8900
Facsimile:   858.509-3691
Email:       lpruitt@sheppard.com

Attorneys for Defendant
RPM LIVING, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE ESCARENO and JUSTIN MANSOUR, on behalf of themselves and all others similarly situated,<br><br>                     Plaintiffs,<br><br>          v.<br><br>RPM LIVING, LLC, a limited liability company,<br><br>                     Defendant. | Case No. 3:26-cv-00597-CAB-MMP<br><br>CLASS ACTION<br><br>**DEFENDANT RPM LIVING, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT [Fed. R. Civ. P. 12(b)(6)]**<br><br>Assigned to:  Hon. Cathy Ann Bencivengo, Crtm. 15A (15th Floor) Rm. 1510<br><br>Date:  March 12, 2026<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT<br><br>Complaint Filed:  December 24, 2025 (Removed from San Diego Superior Court. Case No. 25CL068458C) |

Case No. 3:26-cv-00597-CAB-MMP

SMRH:4901-9008-9097.8        DEFENDANT RPM LIVING, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................. 1

II.   PLAINTIFF'S ALLEGATIONS AND THE FACTS ...................................... 3

      A.    Radian's Website Discloses That "Starting" Rent Prices Are
            "Subject To Change," Discloses All Amenities, And Discloses
            All Fees Before A Potential Resident Applies Or Pays An
            Application Fee ................................................................................. 3

      B.    After Reviewing Proposed Leases That Included the Disputed
            Fees, Plaintiffs Signed the Lease Agreements ................................... 5

      C.    Plaintiffs Filed Their Complaint Against RPM ................................... 7

III.  LEGAL STANDARD ............................................................................ 7

IV.   PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW ............................ 8

      A.    Plaintiffs Do Not Have Standing To Pursue Their Claims .................... 8

      B.    Plaintiffs' First Cause Of Action For Violation Of The FAL Fails ...... 11

            1.    Plaintiffs Fail to Allege RPM Had a Duty to Disclose the
                  Disputed Fees ............................................................................ 11

            2.    The Disclosures on Radian's Website are Not Deceptive .......... 12

      C.    Plaintiffs' Second Cause Of Action For Violation Of The UCL
            Fails ............................................................................................... 17

            1.    The Disputed Fees are Not Unlawful Under the UCL ............... 17

            2.    The Disputed Fees Are Not Unfair Under the UCL ................... 19

            3.    The Disputed Fees Are Not Deceptive Under the UCL ............. 20

      D.    Plaintiffs' Third Cause Of Action For Unjust Enrichment Fails .......... 21

V.    CONCLUSION .................................................................................. 22

SMRH:4901-9008-9097.8

Case No. 3:26-cv-00597-CAB-MMP

DEFENDANT RPM LIVING, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......................................................................... 7

*Astiana v. Hain Celestial Grp., Inc.*
783 F.3d 753 (9th Cir. 2015) ..................................................... 21, 22

*Barber v. Ohana Military Cmtys., LLC*
2015 U.S. Dist. LEXIS 62274 (D. Haw. May 12, 2015) ................... 17

*Baxter v. Intelius, Inc.*
2010 U.S. Dist. LEXIS 104218 (C.D. Cal. Sept. 16, 2010) ......... 13, 16

*Berry v. Webloyalty.com, Inc.*
2011 U.S. Dist. LEXIS 39581 (S.D. Cal. Apr. 11, 2011) (vacated on other
grounds) ...................................................................................... 9, 14

*Berryman v. Merit Prop. Mgmt., Inc.*
152 Cal. App. 4th 1544 (2007) ............................................. 12, 17, 19

*Bott v. Vistaprint USA, Inc.*
392 F. App'x 327 (5th Cir. 2010) .................................................. 14

*Brazil v. U.S. Dept. of Navy*
66 F.3d 193 (9th Cir. 1995) .............................................................. 7

*Bronson v. Johnson & Johnson, Inc.*
2013 U.S. Dist. LEXIS 54029 (N.D. Cal. Apr. 16, 2013) ................... 9

*Butler v. Adoption Media, LLC*
486 F. Supp. 2d 1022 (N.D. Cal. 2007) .......................................... 10

*Carlson v. Coca-Cola Co.*
483 F.2d 279 (9th Cir. 1973) .......................................................... 17

*Castagnola v. Hewlett-Packard Co.*
2012 U.S. Dist. LEXIS 82026 (N.D. Cal. June 13, 2012) ............ 12, 13

*Davis v. HSBC Bank Nevada, N.A.*
691 F.3d 1152 (9th Cir. 2012) ........................................................ 15

*Demeter v. Taxi Comput. Servs., Inc.*
  21 Cal. App. 5th 903 (2018) ............................................................................... 11

*Dey v. Cont'l Cent. Credit*
  170 Cal. App. 4th 721 (2008) .............................................................................. 19

*Downey v. Pub. Storage, Inc.*
  44 Cal. App. 5th 1103 (2020) .............................................................................. 13

*Durell v. Sharp Healthcare*
  183 Cal. App. 4th 1350 (2010) ...................................................................... 21, 22

*Durning v. First Boston Corp.*
  815 F.2d 1265 (9th Cir. 1987) ............................................................................... 8

*Elias v. Hewlett-Packard Co.*
  903 F. Supp. 2d 843 (N.D. Cal. 2012) ................................................................ 19

*Etminan v. Alphatec Spine, Inc.*
  2024 U.S. Dist. LEXIS 153070 (S.D. Cal. Aug. 23, 2024) ................................ 21

*Finkelstein v. AXA Equitable Life Ins. Co.*
  325 F. Supp. 3d 1061 (N.D. Cal. 2018) ................................................................ 8

*Ford v. Hotwire, Inc.*
  2008 U.S. Dist. LEXIS 108584 (S.D. Cal. Feb. 25, 2008) ........................... 16, 19

*Freeman v. Time, Inc.*
  68 F.3d 285 (9th Cir. 1995) ................................................................................. 13

*Harris v. Las Vegas Sands L.L.C.*
  2013 U.S. Dist. LEXIS 185587 (C.D. Cal. Aug. 16, 2013) ................................ 15

*Janda v. T-Mobile, USA, Inc.*
  2009 U.S. Dist. LEXIS 24395 (N.D. Cal. Mar. 13, 2009) .................................. 13

*Kwikset Corp. v. Superior Ct.*
  51 Cal. 4th 310 (2011) ......................................................................................... 21

*Kwon v. Banc of Am. Funding 2005F Tr.*
  2015 U.S. Dist. LEXIS 10568 (N.D. Cal. Jan. 29, 2015) ................................... 12

*Lagrisola v. N. Am. Fin. Corp.*
  96 Cal. App. 5th 1178 (2023) ................................................................................ 8

DEFENDANT RPM LIVING, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

*Marquette Cement Mfg. Co. v. FTC*
  147 F.2d 589 (7th Cir. 1945) .................................................................. 17

*Medina v. Safe-Guard Prods., Internat., Inc.*
  164 Cal. App. 4th 105 (2008) ................................................................. 11

*Mendoza v. Procter & Gamble Co.*
  707 F. Supp. 3d 932 (C.D. Cal. 2023) ............................................... 12, 13

*Park v. Webloyalty.com, Inc.*
  2014 U.S. Dist. LEXIS 138340 (S.D. Cal. Sep. 29, 2014) ...................... 8

*People v. Johnson & Johnson*
  77 Cal. App. 5th 295 (2022) ................................................................... 12

*Saavedra v. Everi Payments, Inc.*
  2022 U.S. Dist. LEXIS 67912 (C.D. Cal. Apr. 11, 2022) ...................... 16

*Shaeffer v. Califia Farms, LLC*
  44 Cal. App. 5th 1125 (2020) ................................................................... 8

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*
  903 F. Supp. 2d 942 (S.D. Cal. 2012) .................................................... 10

*In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.*
  758 F. Supp. 2d 1077 (S.D. Cal. 2010) .................................................. 11

*Spiegler v. Home Depot U.S.A., Inc.*
  552 F. Supp. 2d 1036 (C.D. Cal. 2008) ............................................. 10, 13

*Spotlight on Coastal Corruption v. Kinsey*
  57 Cal. App. 5th 874 (2020) ..................................................................... 8

*Stickrath v. Globalstar, Inc.*
  527 F. Supp. 2d 992 (N.D. Cal. 2007) ........................................... 8, 9, 10

*Ting v. AT&T*
  319 F.3d 1126 (9th Cir. 2003) ................................................................. 17

*Van Patten v. Vertical Fitness Grp., Ltd. Liab. Co.*
  847 F.3d 1037 (9th Cir. 2017) ................................................................... 8

Case No. 3:26-cv-00597-CAB-MMP

SMRH:4901-9008-9097.8
DEFENDANT RPM LIVING, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

<u>Statutes</u>

15 U.S.C.
  § 45(a) ................................................................................................ 17
  § 57b ................................................................................................. 18

Civil Code § 1941.1 ............................................................................. 17, 18

FTC Act
  § 5 ..................................................................................................... 17
  § 5(a) ................................................................................................. 17

<u>Other Authorities</u>

Federal Rule of Civil Procedure 12(b)(6) ................................................ 7, 8

Trade Regulation Rule on Unfair or Deceptive Fees, 90 Fed. Reg. 2066, at
  2067 (FTC Jan. 10, 2025) [to be codified at 16 C.F.R. §§ 464.1–5] ................. 18

1    Defendant RPM Living, LLC ("RPM") hereby submits this memorandum of

2    points and authorities in support of its Motion to Dismiss the Complaint filed by

3    Plaintiffs Joe Escareno and Justin Mansour ("Plaintiffs").

4    ## I.    INTRODUCTION

5    Plaintiffs are residents at a San Diego apartment community known as

6    "Radian," managed by Defendant RPM Living, LLC ("RPM").  In their Complaint,

7    they attempt to repackage ordinary, fully disclosed lease terms—covering items

8    such as amenities, utility billing, pest control, and renter's insurance (the "Disputed

9    Fees")—as purported "junk fees" that supposedly violate California's False

10   Advertising Law ("FAL") and Unfair Competition Law ("UCL").  They also assert

11   a claim for unjust enrichment.  Plaintiff's action, which is just one of a string of

12   copycat class actions against landlords, all based on a fundamental

13   misunderstanding of the law, is meritless and should be dismissed.  Indeed, the

14   Complaint rests on a legally incorrect premise—i.e., that California law prohibits a

15   landlord from charging, and separately itemizing, fees for services and programs

16   that are disclosed in advance and expressly agreed to in a written lease.  It does not.

17   At the outset, much of Plaintiffs' Complaint has nothing to do with *their*

18   experience in renting an apartment and relies instead on generalized allegations and

19   extended footnotes about other consumer contexts that have no bearing on

20   Plaintiffs' claims against RPM or the terms in their leases.[1]  *See, e.g.*, Compl. ¶¶ 1–

21   2, 15–20, 22–29, 31, 33–37, 39–43.  Moreover, Plaintiffs fail to allege what specific

22   advertising *they* viewed, when *they* viewed it, what *they* relied on, and/or how *they*

23   were misled or harmed in any way by RPM's advertised rent.

24   Instead, Plaintiffs make broad allegations about RPM's website, the pricing

25   for a "particular floorplan" (not Plaintiffs'), and what an anonymous "user" or

---

[1]    Accordingly, such allegations, among others, are the subject of RPM's concurrently filed Motion to Strike.

"consumer" would see on various screens.  But even assuming, arguendo, that Plaintiffs did view the website, such generalized allegations fail to state a claim under the FAL or UCL.  In fact, Plaintiffs concede that the website for the Radian property lists a base rent as a "Starting at" price, and the full webpage/popup[2] further discloses that "Prices and availability are subject to change."  Compl. ¶ 47; RJN, Exs. 5-6.  While Plaintiffs contend they were "baited into these transactions," they acknowledge that the application flow on the Radian website allowed them to review a proposed lease—where the Disputed Fees are explicitly spelled out—before they ever submitted an application or paid any kind of application fee or deposit.  Compl. ¶ 71; RJN, Exs. 10-11.  And, after receiving the finalized leases, Plaintiffs signed them, agreeing to the terms and the fees they now challenge.  RJN, Exs. 1-3.

Against that backdrop, Plaintiffs have no standing to pursue their claims.  To pursue their claims, and especially their FAL and UCL claims, Plaintiffs must allege (and establish) that they suffered a concrete injury and that the injury was the result of the false advertising or unfair business practice.  As the Disputed Fees were disclosed to Plaintiffs before they ever paid anything, they have not pled, and cannot plead, an injury-in-fact or one caused by RPM's advertised rent.  Time spent viewing a handful of webpages does not constitute an actionable injury under the law.

Plaintiffs also cannot plausibly plead unlawful, unfair, or deceptive conduct.  Advertising an accurate base rent for a residential apartment is not prohibited by any law, and Plaintiffs identify no authority imposing a duty to present every potential fee—many of which vary by resident, unit, or usage—within a starting rent quote.  Nor can Plaintiffs establish deception where the allegedly omitted terms were

---

[2]  Notably, Plaintiffs cropped their screenshots to omit the bottom portion of the page where the rate change disclosures appear.  *Compare* Compl. ¶¶ 47, 53 with RJN, Exs. 5-6.

disclosed during the application process and then expressly agreed to in the governing leases.  Courts routinely reject UCL/FAL theories on similar facts.

Plaintiffs' unjust enrichment claim fails for these same reasons, because Plaintiffs received the benefits and services the Disputed Fees paid for, and because there are express contracts—the lease agreements—that govern the Disputed Fees. California law does not permit quasi-contract restitution where an enforceable agreement covers the subject matter, and equity provides no basis for restitution when Plaintiffs received the exchange they agreed to.

For these reasons, the Court should dismiss the Complaint in its entirety.

## II.    PLAINTIFF'S ALLEGATIONS AND THE FACTS

**A.    Radian's Website Discloses That "Starting" Rent Prices Are "Subject To Change," Discloses All Amenities, And Discloses All Fees Before A Potential Resident Applies Or Pays An Application Fee**

Plaintiffs generally allege they were "baited" into leasing an apartment at the Radian apartment community in San Diego based on rents advertised on Radian's website.  Compl. ¶ 65.  Yet Plaintiffs acknowledge that Radian's website expressly lists "starting" prices for apartments (e.g., "Starting at $2,950").  *Id.* ¶¶ 45-49.

On the same webpage Plaintiffs screenshot in their Complaint, Radian advises that "Prices and availability are subject to change" (*id.* ¶ 45; RJN, Ex. 5) though Plaintiffs cropped the screenshot in the Complaint to omit this disclosure.  *See* Compl. ¶ 47.

Further, according to Plaintiffs' allegations and screenshots, the Radian website discloses that a "Community Amenity Fee" is added to the rent and prompts users to click the hyperlinked "View Details" prompt to view the Quote Sheet. Compl. ¶¶ 52-53.  The Quote Sheet further details that there are other charges and fees due upon move-in and again discloses that "Rates are subject to change without notice."  Compl. ¶ 53; RJN, Ex. 6.  This disclosure is also cropped from the screenshot in the Complaint.  *Id.*

SMRH:4901-9008-9097.8

1    At the bottom of that same webpage, there is a "Community Fee Guide" that

2    includes a fee breakdown.  Compl. ¶ 60; RJN, Ex. 8.  The Community Fee Guide

3    explains:

> Whether you're a current resident or an interested prospect, we want to
> make it easy to understand what your rent includes and what may
> constitute additional fees. To help with this, we've created a fee list
> below so you can quickly see what fees may apply in addition to your
> base rent.

8    *Id.*  The Guide provides a detailed list of fee types, costs, and frequency, including

9    the amenity fee, pest control services, utility administration fee, renter liability

10   coverage, and utilities (water, trash, pest control, etc.).  RJN, Ex. 9.  Despite these

11   disclosures, Plaintiffs nonetheless contend that they "believed" the "initially listed

12   rents" encompassed all Disputed Fees, such as amenity fees, utility charges, pest

13   control fees, and insurance fees.  *Id.* ¶¶ 67-69.

14   Plaintiffs also contend the Radian website does not disclose what "amenities"

15   are covered by the monthly amenity fee.  *Id.* ¶ 54.  But that contention is belied by

16   the website Plaintiffs allege they were "baited" by, which includes an entire

17   webpage dedicated to amenities, detailing (among other things) a rooftop resort-

18   style pool and spa with cabanas and TVs, guest suite accommodations, resident

19   lounge with demonstration kitchen, billiards, communal and intimate seating areas,

20   clubhouse with fireside seating and micro-offices, a private conference room,

21   rooftop barbeque area with pizza oven, an indoor/outdoor fitness center, yoga room,

22   dog spa, parking garage, on-site retail essentials, and package acceptance/storage.

23   RJN, Ex. 4.  The website homepage also highlights these amenities with large

24   rotating images and multiple links (e.g., "Amenities," "Exquisite Amenities," "View

25   the Amenities," and "View the Gallery").  RJN, Ex. 4.

26   And after clicking the "Apply Now" button on the screen referenced in

27   Plaintiffs' Complaint, applicants are directed to enter their name and contact

28   information to begin the application process.  RJN, Ex. 10; Compl. ¶ 52.  By

-4-

clicking "Create My Account," applicants agree that "[b]y creating your account you are agreeing to the Terms and Conditions and Privacy Policy[.]"  RJN, Ex. 10. The Terms and Conditions provide, in relevant part, that applicants have the opportunity to review all fees associated with their tenancy before they pay anything:

> Applicant's submission of this Application, ***including payment of any fees and deposits***, is being done ***only after*** applicant has fully investigated, to its satisfaction, those facts which applicant deems material and necessary to the decision to apply for a rental unit. . . . ***Before you submit an Application or pay any fees or deposits, you have the right to review the Application and Lease***, as well as any community rules or policies we have. You may also consult an attorney. These documents are binding legal documents when signed. . . .  Before submitting an Application or signing a Lease, you may take a copy of these documents to review and/or consult an attorney.

RJN, Ex. 11 (emphasis added)  After applicants create an account, they are able to view a "proposed lease" agreement, which Plaintiffs admit they were "allowed to view."  Compl. ¶ 71; RJN, Ex. 11.  Only then may applicants submit the application and pay any application fee and deposit.  *Id.*

**B.    After Reviewing Proposed Leases That Included the Disputed Fees, Plaintiffs Signed the Lease Agreements**

On September 18, 2024, after reviewing his proposed lease online, Plaintiff Joe Escareno entered into a Lease Agreement for an apartment unit at Radian for the term September 20, 2024, through October 19, 2025.  RJN, Ex. 1; Compl. ¶ 71. Escareno agreed to a base rent of $3,950.00.  *Id.* ¶ 6.

The Lease Agreement expressly set forth each of the Disputed Fees, including utility charges, the pest control fee, optional insurance-related fees, and an administrative billing fee of $5.00.  RJN, Ex. 1 (Utility and Services Addendum). The Lease advised him that he was responsible for paying "utilities, related deposits, and any charges, fees, or services on such utilities."  *Id.*  Escareno also agreed that calculating utilities using an allocation formula to estimate total utility consumption

-5-

is "fair and reasonable[.]"  *Id.*  The Lease further advised Escareno that insurance for losses to personal property and personal liability insurance (i.e., "renter's insurance") was required.  *Id.* ¶ 8.

The Addendum to Lease—Community Rules and Policies, which Escareno signed, further explains how residents could either obtain their own renter's insurance policy or use the insurance carrier offered by RPM, as well as the availability of pest control services and treatments for their apartments:

> You understand that by not maintaining a renter's or liability insurance policy, you may be liable to us and others for loss or damage caused by your actions or those of any occupant or guest in the dwelling. This community requires financial responsibility from all Resident(s). To satisfy that requirement, you must provide evidence of insurance coverage that has personal liability coverage with limits of liability not less than $100,000. . . . This financial responsibility is required for the entire term of your Lease and must be purchased individually for each occupant. . . As an added service to our Resident(s), we work with an insurance carrier to offer you insurance protection. This insurance product provides coverage options designed specifically for our Resident(s) and meets your Lease's coverage and notification requirements. At your choice, you are pre-qualified to enroll in one of our programs offered by your community, or you may secure your coverage elsewhere. . . Residents may also opt into our liability-only program by paying a monthly fee each month with rent. . . *ANY RESIDENT IN VIOLATION OF THESE REQUIREMENTS WILL BE CHARGED THE OPT-IN FEE OF $25 PER MONTH FOR EVERY MONTH THAT PROOF OF COVERAGE IS NOT CURRENT.* This fee will be charged on the 1st of month billing and is not refundable.
> . . . .
>
> You will pay a monthly fee for pest control as outlined in the Lease; this fee is due with rent.  Pest Control is available weekly by request at no additional charge for general pest treatments.

RJN, Ex. 1.  After having the opportunity to review the proposed lease—which clearly indicated he would be responsible for the Disputed Fees in addition to the base rent—Escareno signed the Lease Agreement.  In fact, Escareno later renewed his Lease, to extend the term to June 19, 2026, and to add Rodney Mays as a co-

1  tenant (Mays is not a party to this action).  RJN, Ex. 2.  That amended Lease

2  Agreement included the same terms detailing the categories and nature of all

3  Disputed Fees.  RJN, Ex. 2.

4      On March 31, 2025, after having the opportunity to review a proposed lease,

5  Plaintiff Justin Mansour entered into a Lease Agreement for the term April 5, 2025,

6  through May 4, 2026.  RJN, Exs. 3; Compl. ¶ 71.  Mansour's Lease Agreement was

7  substantially similar to Escareno's, including the disclosure of all Disputed Fees.  *Id.*

8  However, Mansour agreed to a base rent of $3,600.00 for a 12-month term.  *Id.* ¶ 6.

9  Unlike Escareno, however, Mansour received significant rent concessions totaling

10  $10,200.00.  *Id.* (Lease Addendum for Rent Concession or Other Discount ¶ 3).

**C.    Plaintiffs Filed Their Complaint Against RPM**

12      On December 24, 2025, Plaintiffs filed their putative class action complaint

13  against RPM in San Diego County Superior Court, alleging violations of the UCL,

14  FAL, and unjust enrichment.  Dkt. No. 1.  On January 29, 2026, RPM removed the

15  case to this Court on the basis of diversity jurisdiction.  *Id.*

### III.    LEGAL STANDARD

17      Federal Rule of Civil Procedure 12(b)(6) authorizes courts to dismiss an

18  action when a plaintiff fails to state a claim upon which relief can be granted.

19  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

20  detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of her

21  'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

22  recitation of the elements of a cause of action will not do."  *Brazil v. U.S. Dept. of*

23  *Navy*, 66 F.3d 193, 199 (9th Cir. 1995) (alteration in original) (internal citations

24  omitted).  A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of

25  'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

26  (alteration in original) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557

27  (2007)).

28

When ruling on a motion to dismiss, the court should disregard allegations contradicted by exhibits to the complaint, or by judicially noticed facts. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). Courts are permitted to look beyond the pleadings and may take into account documents that are not physically attached to the complaint if the contents of the document are referred to in the complaint and the authenticity of the documents is not questioned. *Finkelstein v. AXA Equitable Life Ins. Co.*, 325 F. Supp. 3d 1061, 1066 (N.D. Cal. 2018). "The court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Park v. Webloyalty.com, Inc.*, 2014 U.S. Dist. LEXIS 138340, at *5 (S.D. Cal. Sep. 29, 2014) (internal quotations omitted).

## IV.    PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW

### A.    <u>Plaintiffs Do Not Have Standing To Pursue Their Claims</u>

"Standing is a threshold issue necessary to maintain a cause of action, and the burden to allege and establish standing lies with the plaintiff." *Spotlight on Coastal Corruption v. Kinsey* 57 Cal. App. 5th 874, 882 (2020); *Van Patten v. Vertical Fitness Grp., Ltd. Liab. Co.*, 847 F.3d 1037, 1048 (9th Cir. 2017) (noting plaintiffs must establish standing under the UCL and FAL); *Stickrath v. Globalstar, Inc.,* 527 F. Supp. 2d 992, 995 (N.D. Cal. 2007). Plaintiffs' claims fail for lack of standing.

"A person has standing to bring a claim under the [UCL], the [FAL], or the CLRA only if she establishes that (1) she 'has suffered' 'economic injury' or 'damage,' and (2) this injury or damage "was the result of, i.e., *caused by*," the unfair business practice or false advertising "that is the gravamen of [her] claim." *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1137 (2020); *Lagrisola v. N. Am. Fin. Corp.*, 96 Cal. App. 5th 1178, 1190 (2023); *Stickrath,* 527 F. Supp. 2d at 995 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)) (explaining that the plaintiff must have suffered an injury in fact that is "fairly traceable to the

1  challenged conduct of the defendant" to establish constitutional standing and

2  standing under the UCL).

3      Moreover, "actual reliance is required to have standing to sue under the UCL

4  or FAL." *Berry v. Webloyalty.com, Inc.*, 2011 U.S. Dist. LEXIS 39581, at *17 (S.D.

5  Cal. Apr. 11, 2011) (vacated on other grounds); *Bronson v. Johnson & Johnson,*

6  *Inc.*, 2013 U.S. Dist. LEXIS 54029, at *7-9 (N.D. Cal. Apr. 16, 2013) ("[i]n order to

7  have standing to bring a UCL, FAL, or CLRA claim, Plaintiffs must plead that they

8  relied on the misleading materials.").

9      For example, in *Stickrath*, the court dismissed UCL and CLRA claims for

10 lack of standing where plaintiffs failed to allege they read or relied on any

11 misrepresentations before purchasing the defendant's service.  527 F. Supp. 2d at

12 996.  The court emphasized that merely stating injuries were caused by defendant's

13 conduct was insufficient.  *Id.*  Rather, plaintiffs must plead specific facts showing

14 causation and actual detrimental reliance.  *Id.* at 995.

15     Similarly, in *Bronson*, the court dismissed claims under California's UCL and

16 FAL to the extent they were based on internet and print advertising because

17 plaintiffs failed to adequately allege that they relied on those ads before making

18 their purchase.  2013 U.S. Dist. LEXIS 54029, at *7-9.  The court emphasized that,

19 for standing, a plaintiff is not permitted to support a false advertising claim with

20 "statements that he 'never read or relied upon' when making his purchase." *Id.* at

21 *8.  It is insufficient that plaintiffs merely referenced the ads or described the overall

22 marketing campaign without alleging they saw or relied on the challenged

23 statements prior to making a purchase.  *Id.*at *8-*9.

24     Here, Plaintiffs fail to plausibly allege (1) a concrete injury (i.e., "lost money

25 or property") or (2) causation—that any such loss was caused by the alleged

26 advertising.

27     First, there was no concrete injury.  The only payments Plaintiffs identify—

28 the Disputed Fees—arise from, and are governed by, the Lease Agreements

-9-

Plaintiffs voluntarily signed after disclosure of those fees.  A plaintiff cannot establish injury-in-fact simply by paying for services disclosed in a contract. *See Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1047 (C.D. Cal. 2008) (finding no deception where the plaintiff was charged exactly what the contract stated).

Moreover, to the extent Plaintiffs attempt to recast "injury" as time spent in the application process or disappointment with the fee structure, that is not "lost money or property" under the law.  *See Butler v. Adoption Media, LLC,* 486 F. Supp. 2d 1022, 1062 (N.D. Cal. 2007) (explaining that plaintiffs' expenditure of time and money preparing application was not loss of money or property necessary for standing because "[r]estitution, which is the only monetary recovery possible under § 17200, involves the payment or return of money or property that belongs to the plaintiff"); *see In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) (holding that lost time and money spent on risk mitigation "do not suffice as injury under the UCL, FAL and/or the CLRA.").

Second, Plaintiffs were presented with the Disputed Fees *before* they had to pay anything—i.e., before they paid an application fee, a deposit, etc.—which means there was no "injury" associated with the disclosure of those fees.  *See Stickrath*, 527 F. Supp. 2d at 996 (finding the plaintiff failed to establish standing under their UCL/CLRA claims because they failed to allege that any of the misrepresentations were made before Plaintiffs' purchase).  Plaintiffs could not have relied on any alleged misrepresentations because all Disputed Fees were fully disclosed to them before any payment or commitment was required, precluding any possible injury attributable to deceptive conduct.  Indeed, Plaintiffs' concession that the Disputed Fees were disclosed during the application process is fatal to causation.

Third, Plaintiffs do not allege that they failed to receive the services associated with the Disputed Fees—e.g., trash service, water and water heating

services, pest control, sewer service, access to the pool and fitness facilities, etc.  *See Demeter v. Taxi Comput. Servs., Inc.*, 21 Cal. App. 5th 903, 917 (2018) (affirming the judgment in defendant's favor on UCL claim because plaintiff did not establish that the service he purchased was not up to par or worth less than he paid); *Medina v. Safe-Guard Prods., Internat., Inc.*, 164 Cal. App. 4th 105, 114-115 (2008) (finding no UCL injury where plaintiff did not allege he lacked or did not want the coverage, received unsatisfactory service, or overpaid for it).

Finally, Plaintiff Mansour cannot allege an injury in fact because he received significant rent concessions that far exceeded any alleged injury.  Plaintiffs allege that residents were harmed by approximately $105 per month in allegedly undisclosed fees resulting from RPM's purported "drip pricing" practices.  Compl. ¶ 62.  However, Mansour received rent concessions totaling $10,200—an amount far exceeding the cumulative fees he alleges were improperly charged ($105 x 12 months = $1,260).  RJN, Ex. 3.  Indeed, Mansour ultimately paid less than the "starting" rent price he claims was deceptive.  Accordingly, he cannot establish standing or injury under the UCL or FAL for this reason as well.

Because Plaintiffs cannot plead an injury in fact caused by the challenged advertising, they lack standing to pursue their claims against RPM.  The Court should dismiss this action on this ground alone.

**B.**    **<u>Plaintiffs' First Cause Of Action For Violation Of The FAL Fails</u>**

Plaintiffs' FAL claim, as well as their UCL claim premised on deception, are based on their allegation that RPM makes "false or misleading statements about the monthly cost of renting its apartments" and "advertising one upfront price that is not available to any prospective renter."  Compl. ¶ 87, *see also* ¶ 93.  Plaintiffs' claims fail as a matter of law.

1.    <u>Plaintiffs Fail to Allege RPM Had a Duty to Disclose the Disputed Fees</u>

First, Plaintiffs cannot maintain a claim under the FAL or the UCL based on nondisclosure because there was no duty to disclose the Disputed Fees.  *In re Sony*

1  *Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.*, 758 F.

2  Supp. 2d 1077, 1092 (S.D. Cal. 2010) ("A plaintiff alleging that the defendant failed

3  to disclose material facts must, however, establish that the defendant had a duty to

4  disclose those facts."); *Kwon v. Banc of Am. Funding 2005F Tr.*, 2015 U.S. Dist.

5  LEXIS 10568, at *6-7 (N.D. Cal. Jan. 29, 2015) (dismissing fraud claims where

6  "plaintiff has not alleged that defendants had a legal duty to disclose the existence of

7  any 'kickbacks' or 'referral fees'"); *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal.

8  App. 4th 1544, 1557 (2007) ("Absent a duty to disclose, the failure to do so does not

9  support a claim under the fraudulent prong of the UCL.").

10         As detailed herein, there is no law or rule establishing a duty to list certain

11  fees in a rental advertisement, and Plaintiffs do not identify any such duty.  In any

12  event, RPM disclosed the monthly charges and fees before Plaintiffs submitted an

13  application to rent an apartment at Radian, as reflected in the website materials

14  (portions of which Plaintiffs selectively screenshot) and the Lease Agreements

15  Plaintiffs signed.  Compl. ¶¶ 45-49, 52-53, 71; RJN, Exs. 1-3, 6, 8-9.

16         2.    <u>The Disclosures on Radian's Website are Not Deceptive</u>

17         An advertisement is actionable under the FAL/UCL only if it is likely to

18  deceive a reasonable consumer.  *People v. Johnson & Johnson*, 77 Cal. App. 5th

19  295, 319 (2022).  "The phrase [l]ikely to deceive implies more than a mere

20  possibility that the advertisement might conceivably be misunderstood by some few

21  consumers viewing it in an unreasonable manner."  *Castagnola v. Hewlett-Packard*

22  *Co.*, 2012 U.S. Dist. LEXIS 82026, at *19 (N.D. Cal. June 13, 2012) (internal

23  quotations omitted).  Rather, to "satisfy the reasonable consumer test, a plaintiff

24  must show 'a probability that a significant portion of the general consuming public

25  or of targeted consumers, acting reasonably in the circumstances, could be misled'

26  by the advertisement."  *Mendoza v. Procter & Gamble Co.*, 707 F. Supp. 3d 932,

27  941 (C.D. Cal. 2023).

28

On a motion to dismiss, dismissal is appropriate where the advertising itself makes it implausible that a reasonable consumer would be deceived. *Id.*; *see e.g.*, *Janda v. T-Mobile, USA, Inc.*, 2009 U.S. Dist. LEXIS 24395, at *19-*21, *25 (N.D. Cal. Mar. 13, 2009) (where the plaintiffs accused T-Mobile of engaging in a "bait and switch" by charging undisclosed fees that exceeded advertised rates, the court found the practices were not misleading because the service agreements disclosed the potential for additional fees); *Castagnola v. Hewlett-Packard Co.*, 2012 U.S. Dist. LEXIS 82026, at *19 (dismissing UCL and CLRA claims and finding that no reasonable consumer could think that the service he was signing up for was free where the webpage "contain[ed] four references to the fact that there [were] 'offer details'" and those details stated that there was a fee); *Baxter v. Intelius, Inc.*, 2010 U.S. Dist. LEXIS 104218, *15-16 (C.D. Cal. Sept. 16, 2010) ("Due to the disclosures and the affirmative acceptance requirements on the interstitial webpage, a reasonable member of the public would not likely be deceived."); *Downey v. Pub. Storage, Inc.*, 44 Cal. App. 5th 1103, 1118 (2020) (explaining that an advertisement is not deceptive where it discloses other fees applied and the total charge would exceed "rent"); *see also Spiegler*, 552 F. Supp. 2d at 1047 (rejecting UCL fraudulent-prong claim where defendant charged plaintiff the amount stated in the contract).

For example, in *Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995), the Ninth Circuit affirmed dismissal of UCL and CLRA claims challenging allegedly misleading sweepstakes mailers on the grounds that the promotion disclosures were in small print. *Id.* at 289. The court rejected the claims, finding that none of the disclosures were hidden or unduly small, and any ambiguity was dispelled by the repeated, conspicuous disclosures of the actual terms. *Id.* at 290. Because the mailings were not likely to mislead a reasonable person, plaintiff failed to state a claim for deceptive or unfair practices. *Id.*

Similarly, in *Berry*, the court granted the defendant's motion to dismiss all claims—including UCL and FAL claims—arising from an online enrollment process for a membership club. 2011 U.S. Dist. LEXIS 39581, at *15-*16. The court found that the enrollment page provided clear and repeated disclosures regarding both the nature and cost of membership, as well as the transfer of billing information and monthly dues. *Id.* at *19. The court emphasized that a reasonable consumer is on notice when material terms are presented in close proximity to where agreement is indicated, and consumers cannot claim deception simply for declining to read easily understandable disclosures. *Id.* at *13-*14. Because the plaintiff could not plausibly allege deception or omission in light of the conspicuous disclosures, all fraud-based and consumer claims—including claims for unfairness, false advertising, unjust enrichment, and conversion—were dismissed. *Id.* at *16-*19.

Radian's website is not misleading and does not constitute false advertising. Plaintiffs concede the website advertises "Starting at" prices—i.e., an opening or baseline price point, not a promise of an all-in total. Compl. ¶ 45. The "starting at" language communicates that the figure is not a guaranteed final monthly total and that additional amounts may apply depending on the unit selected, timing, and other variables. Plaintiffs' screenshots also omit that the same webpages state: "Prices and availability are subject to change" and "Rates are subject to change without notice." RJN, Exs. 5-6; Compl. ¶¶ 47, 53. These disclosures further defeat any plausible claim that the starting figure was a fixed, all-inclusive promise.

Plaintiffs also admit that clicking "View Details" displays the amenity fee alongside the base rent. Compl. ¶¶ 55-56. And Plaintiffs acknowledge the page contains a Community Fee Guide explaining the costs associated with renting a unit, with a fee breakdown listing categories, costs, and frequency. Compl. ¶ 60; RJN, Exs. 8-9. These disclosures foreclose any plausible inference that RPM "hid the ball" or represented base rent as the total price. *See Bott v. Vistaprint USA, Inc.*, 392

-14-

F. App'x 327, 327-28 (5th Cir. 2010) (explaining that the district properly observed that "[a] consumer cannot decline to read clear and easily understandable terms that are provided on the same webpage in close proximity to the location where the consumer indicates his agreement to those terms and then claim that the webpage, which the consumer failed to read, is deceptive.").

Any purported misunderstanding was also cured by the application flow and the fact that Plaintiffs could review a proposed lease before they even submitted an application.  Again, Plaintiffs acknowledge they could view a proposed lease during the online application process (Compl. ¶ 71), and the Lease Agreements they ultimately signed disclose the Disputed Fees.  RJN, Exs. 1-3, 11.  Plaintiffs were charged exactly what their Leases stated they would be charged.  There is nothing deceptive or misleading about that.

Even setting aside the express disclosures, Plaintiffs' theory is implausible under the reasonable consumer standard.  The Ninth Circuit's reasoning in *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012), is instructive: the absence of a specific fee in an initial advertisement does not, by itself, make the advertisement deceptive where a reasonable consumer would not infer "no fee" from silence.  *Id.* at 1162.  In *Davis*, the plaintiff applied for a credit card after reviewing advertising materials that did not mention an annual fee, and then later learned there was an annual fee.  *Id.* at 1158.  The district court dismissed the FAL, UCL, and fraudulent concealment claims with prejudice, and the Ninth Circuit affirmed, explaining that no reasonable consumer would be deceived into thinking there was no annual fee just because it was not explicitly mentioned in the advertisement.  *Id.* at 1159, 1162; *see also Harris v. Las Vegas Sands L.L.C.*, 2013 U.S. Dist. LEXIS 185587, at *16-17 (C.D. Cal. Aug. 16, 2013) (dismissing FAL and UCL claims with prejudice because no reasonable consumer would be deceived where the booking pages disclosed the mandatory resort fee and taxes directly beneath the "Grand Total," and "applicable resort fee" unambiguously conveyed a

required fee); *Ford v. Hotwire, Inc.*, 2008 U.S. Dist. LEXIS 108584, at *8 (S.D. Cal. Feb. 25, 2008) (dismissing FAL and UCL claims where the website disclosed the quoted rate excluded potential resort fees and a reasonable consumer was not likely to be deceived, particularly because consumers could independently research the hotel's fees or book directly); *Baxter*, 2010 U.S. Dist. LEXIS 104218 at *12 (dismissing UCL and FAL claims with prejudice where the membership enrollment webpage disclosed the nature, terms, and cost of the membership and therefore the plaintiff could not plausibly state deception or standing, even if he chose not to read the disclosures); *Saavedra v. Everi Payments, Inc.*, 2022 U.S. Dist. LEXIS 67912, at *12-13 (C.D. Cal. Apr. 11, 2022) (dismissing claim of deception where defendants' screen warned users that selection of any option "may assess a fee," and a reasonable consumer would understand that fees, if any, depend on their financial institution's practices).

Likewise here, no reasonable renter would treat an online "starting at" rent display as a guaranteed, all-in monthly total—particularly where the website flags additional charges and directs users to detailed fee information.  Again, Plaintiffs acknowledge that a consumer can scroll down or click "View Details" to see the additional fees.  Further, a reasonable renter would expect certain categories of charges—e.g., parking, storage, amenities, utilities, insurance, etc.—may be separate from base rent since they vary by resident or usage.  In fact, some of these optional fees—like renter's insurance—cannot be accurately included with the "upfront price" as they depend on whether the applicant will obtain his or her own policy or decide to use RPM's recommended carrier.

Accordingly, it would be impracticable for landlords to advertise an all-in total that accounts for every resident-specific or usage-based variable.  But Radian's website discloses as much as possible before an applicant applies to rent an apartment or signs a lease.  Plaintiffs' FAL claim (and UCL claim based on deception) therefore fail and should be dismissed.

**C.**     <u>**Plaintiffs' Second Cause Of Action For Violation Of The UCL Fails**</u>

    1.     <u>The Disputed Fees are Not Unlawful Under the UCL</u>

The "unlawful" prong of the UCL "borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL." *Berryman*, 152 Cal. App. 4th at 1554. "Thus, a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Id.*

Plaintiffs vaguely contend that the Disputed Fees violate the FAL, Section 5(a) of the FTC Act, and Civil Code section 1941.1, the latter of which because—they contend—landlords are obligated to bear all maintenance costs. *See* Compl. ¶¶ 58-59, 93.[3] Plaintiffs are mistaken.

First, as discussed above, the Disputed Fees do not violate the FAL.

Second, the FTC Act cannot serve as a basis to pursue a UCL claim against RPM. Section 5 of the FTC Act, 15 U.S.C. § 45(a), is the statute's generic prohibition on "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" As an initial point, the FTC Act does not contain a private right of action. Instead, "[t]he protection against unfair trade practices afforded by the Act vests initial remedial power solely in the Federal Trade Commission. *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280 (9th Cir. 1973); *see also Marquette Cement Mfg. Co. v. FTC*, 147 F.2d 589, 594 (7th Cir. 1945) (holding that only the Federal Trade Commission has the power to

---

[3] Plaintiffs also reference the Consumers Legal Remedies Act ("CLRA") in their Complaint to argue that California law prohibits "bait-and-switch drip pricing." Compl. ¶¶ 37-39. Plaintiffs, however, do not cite the CLRA as an underlying violation in their second cause of action. *See id.* at ¶ 93. Nor can they, as the CLRA does not apply to residential housing. *See Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003) ("The CLRA is also inapplicable to rental agreements."); *Barber v. Ohana Military Cmtys., LLC*, 2015 U.S. Dist. LEXIS 62274, at *10-13 (D. Haw. May 12, 2015) (agreeing residential leases are not transactions for goods or services).

-17-    Case No. 3:26-cv-00597-CAB-MMP

SMRH:4901-9008-9097.8    DEFENDANT RPM LIVING, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

protect the public against unfair methods of competition).  But even the FTC would need to rely on a rule violation to seek relief.  *See* 15 U.S.C. § 57b.  Here, there is no applicable FTC rule for Plaintiffs to utilize as the predicate violation for their UCL claim; and indeed their Complaint is completely void of any such rule or regulation addressing rental housing.  *See generally*, Compl.

In fact, last year the FTC promulgated a new rule governing fee disclosures—but only in the live event ticket and short-term rental/hoteling industries, <u>not</u> for rental housing.  *See* Trade Regulation Rule on Unfair or Deceptive Fees, 90 Fed. Reg. 2066, at 2067 (FTC Jan. 10, 2025) [to be codified at 16 C.F.R. §§ 464.1–5] (the "Fee Rule"), RJN Ex. 13.  While the FTC had originally proposed a broader rule that could have applied across a number of industries, including rental housing, it ultimately narrowed the scope of the final Fee Rule to just the ticketing and hoteling industries.  *See id*.  Because the Fee Rule does not apply to rental housing, it cannot serve as the basis for Plaintiff's UCL claim.

Third, Plaintiffs' Civil Code section 1941.1 theory fails.  Nothing in section 1941.1 prohibits a landlord from passing certain costs—such as trash removal and pest control—on to residents through a written lease agreement.  As explained by the Orange County Superior Court:

> [T]here is nothing in Civil Code section 1941.1 that prohibits a landlord from collecting a de minimis fee from tenants for ***pest control services***. Indeed, the statute only describes what conditions would render a dwelling "untenantable".  It does not state that a landlord is required to bear all of the ***maintenance costs*** for these conditions.  If the statute were to be interpreted as suggested by Plaintiff, then a landlord would not be able to include any maintenance costs in the amount charged for rent—including such maintenance costs as ***trash collection*** or janitorial services for the basic cleaning of the premises. Such an interpretation would imply that a for-profit business, such as a real estate leasing business, must have statutory authorization for providing a service and charging a fee for that service.  Such "logic" is fundamentally flawed.

RJN, Ex. 12, p. 15 (emphasis added) (citing *Berryman,* 152 Cal. App. 4th at 1553-1554).

No court has held that apartment residents categorically cannot be charged for services provided, and courts have held that the burden is on plaintiffs to show why a for-profit business may not charge a fee for a service. *See Dey v. Cont'l Cent. Credit*, 170 Cal. App. 4th 721, 730 (2008); *Berryman*, 152 Cal. App. 4th at 1555 (noting there is no "statutory or case law that requires a for-profit business to point to a statute or contract that allows it to charge a fee for a service").

Accordingly, Plaintiffs' allegations fail to state a claim under the UCL's unlawful prong.

2.   <u>The Disputed Fees Are Not Unfair Under the UCL</u>

Plaintiffs also fail to plausibly establish that RPM's business practices are "unfair" within the meaning of the UCL.  A practice is "unfair" only if it is immoral, unethical, oppressive, or unscrupulous and causes substantial injury to consumers that is not reasonably avoidable and outweighs any benefits. *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012); *see e.g. Ford,* 2008 U.S. Dist. LEXIS 108584, at *8 (holding the challenged practice was not unfair where the website disclosed the potential for fees).  A plaintiff may pursue a UCL unfairness claim only if the alleged injury is "substantial" and "not an injury the consumers themselves could reasonably have avoided." *Berryman*, 152 Cal. App. 4th at 1555.

RPM's disclosure of the Disputed Fees does not satisfy the "unfair" standard. First, the Disputed Fees were disclosed before Plaintiffs even paid an application fee and well before they were bound by their Leases.  Plaintiffs do not allege RPM concealed fees or failed to disclose them before their application was submitted.  To the contrary, the fees were plainly itemized in the Community Fee Guide and the proposed Lease Agreements; and Plaintiffs acknowledge they were able to view the Disputed Fees in their proposed Lease Agreements.  Compl. ¶ 71.

1   Second, Plaintiffs could have reasonably avoided any purported injury by

2 declining to apply, declining to pay any application fee, and declining to sign the

3 Leases.  If Plaintiffs did not wish to pay the Disputed Fees, they could have

4 discontinued the application process at any time, at no cost or penalty.  The process

5 did not require Plaintiffs to forgo anything of value before the fees were disclosed.

6 Plaintiffs therefore cannot allege a irremediable injury.

7   Third, Plaintiffs do not allege a substantial injury.  The only "injury" alleged

8 is payment of Disputed Fees, which Plaintiffs expressly agreed to pay in their

9 Leases.  Plaintiffs received what they bargained for: occupancy and access to the

10 amenities and services described.  Plaintiffs do not allege RPM withheld access to

11 any service covered by the Disputed Fees or that the fees were unlawfully charged.

12   Moreover, Plaintiff Mansour's experience further underscores the absence of

13 any "unfair" conduct or substantial injury.  Mansour received rent concessions

14 totaling $10,200, amounting to three months of free rent.  This substantial benefit far

15 outweighs any alleged harm associated with his claim that RPM deceptively

16 advertised the starting rent price.  Having received more value than he claims was

17 lost, Mansour cannot plausibly allege that RPM's practices were unfair within the

18 meaning of the UCL.

19   Because Plaintiffs voluntarily proceeded with their rental applications and

20 signed Lease Agreements after disclosure and without coercion, their unfairness

21 theory fails.  The Court should dismiss Plaintiffs' UCL claim under the unfair

22 prong.

23   3.  The Disputed Fees Are Not Deceptive Under the UCL

24   As detailed above in Section IV.B.2, the Disputed Fees are not deceptive.

25 Moreover, under California law, a plaintiff "proceeding on a claim of

26 misrepresentation as the basis of his or her UCL action must demonstrate actual

27 reliance on the allegedly deceptive or misleading statements, in accordance with

28 well-settled principles regarding the element of reliance in ordinary fraud actions."

1    *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 306 (2011).  As noted above,

2    Plaintiffs' allegations of fraud or deception are woefully pled, noting only what an

3    anonymous "user" or "consumer" may find on the Radian website for a "particular

4    unit."  There are no allegations detailing what advertisement *Plaintiffs* actually

5    viewed, when they viewed it, what it said, or how exactly they relied on those

6    representations in the advertisement.  Instead, Plaintiffs simply allege, in conclusory

7    fashion, that they were "baited into these transactions by, and relied on, the rents

8    RPM advertised up front on its website."  Compl. ¶ 65.  That is insufficient under

9    the deceptive prong of the UCL.

10   **D.    <u>Plaintiffs' Third Cause Of Action For Unjust Enrichment Fails</u>**

11        Plaintiffs' claim for unjust enrichment hinges on their allegation that

12   "Defendant received a benefit at Plaintiffs' expense when Plaintiffs paid the

13   monthly junk fees Defendant charged."  Compl. ¶ 97.  Plaintiffs are mistaken, and

14   their claim fails as a matter of law.

15        In California, unjust enrichment is properly construed as a quasi-contract

16   claim seeking restitution.  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63

17   (9th Cir. 2015).  However, "quasi-contract claims for restitution based on unjust

18   enrichment cannot be asserted when there are enforceable agreements covering the

19   subject matter."  *Etminan v. Alphatec Spine, Inc.*, 2024 U.S. Dist. LEXIS 153070, at

20   *7-*8 (S.D. Cal. Aug. 23, 2024); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th

21   1350, 1370 (2010) (same).  "To avoid being precluded from asserting a quasi-

22   contract claim in the alternative under the theory of unjust enrichment, the plaintiff

23   must deny the existence of enforceable agreements in their quasi-contract claim or

24   show that the agreement does not govern the underlying subject matter."  *Etminan*,

25   2024 U.S. Dist. LEXIS 153070, at *7-*8.

26        Here, Plaintiffs cannot assert a quasi-contract claim for restitution because

27   their Lease Agreements govern the Disputed Fees.  Plaintiffs do not deny the

28   existence or enforceability of their Leases.  Indeed, Plaintiffs continue to reside at

Radian pursuant to those Leases.  RJN, Exs. 1-3.  Accordingly, Plaintiffs' unjust enrichment claim must be dismissed as a matter of law.

Plaintiffs' unjust enrichment claim also fails because they do not plausibly allege that RPM was unjustly enriched by fees Plaintiffs expressly agreed to pay.  *Durell*, 183 Cal. App. 4th at 1371 ("There is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected.").  To prevail, Plaintiffs must show RPM "has been unjustly conferred a benefit through mistake, fraud, coercion, or request."  *Astiana*, 783 F.3d at 762.

The Disputed Fees were disclosed on Radian's website and in the proposed leases Plaintiffs could review during the application process—*before* Plaintiffs submitted an application or paid an application fee or deposit.  Plaintiffs nevertheless voluntarily entered into their Lease Agreements with full knowledge of the Disputed Fees, and they do not allege they failed to receive the associated benefits and services (e.g., water, pest control services, trash service, sewer services, access to amenities, etc.).

In fact, Plaintiff Mansour received not only the full use of his residence and the amenities and services contracted for, but also received significant rent concessions that far exceed the fees at issue.  Thus, he cannot allege that RPM was enriched, let alone unjustly so, at his expense.

Plaintiffs therefore cannot state a claim for restitution.  Plaintiffs' unjust enrichment claim fails, and the Court should dismiss Plaintiffs' third cause of action with prejudice.

## V.    CONCLUSION

For these reasons, the Court should grant RPM's motion to dismiss.

Dated:  February 5, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By       *s/Mark G. Rackers*
_____
MARK G. RACKERS
Attorneys for Defendant
RPM LIVING, LLC

E-mail: mrackers@sheppard.com

Case No. 3:26-cv-00597-CAB-MMP
DEFENDANT RPM LIVING, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT